NIKOLAI LACHOWICZ (SBN 201362)
**LACHOWICZ LAW P.C.**
1611 S. Pacific Coast Highway, Suite 204
Redondo Beach, CA 90277
T: (213) 254-2419
E: nik@lachowiczlaw.com

Attorneys for Plaintiffs NT CAPITAL MANAGEMENT LLC, a Delaware Limited Liability Company, and TIEN DUNG NGUYEN, an Individual

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALFORNIA**

NT CAPITAL MANAGEMENT LLC, a Delaware Limited Liability Company and TIEN DUNG NGUYEN, an Individual,

Plaintiffs,

vs.

TRUIST BANK, NA, a National Association, STACEY A. SHERMAN, an Individual, DEBORAH M. BRYAN, an Individual, EA ENGINEERING SCIENCE AND TECHNOLOGY INC., a Maryland corporation, and DOES 1 through 20, Inclusive;

Defendants.

Case No. 2:24-cv-09461 -HDV-AJRx

**PLAINTIFFS NT CAPITAL MANAGEMENT LLC AND TIEN DUNG NGUYEN SECOND AMENDED COMPLAINT FOR:**

(1) Cal. Com. Code § 11207
(2) Negligent Hiring, Supervising and Retention
(3) Aiding and Abetting Fraud
(4) Conversion
(5) Declaratory Relief

**DEMAND FOR JURY TRIAL**

Action Filed: 10/2/2024
Trial Date: 4/20/27

District Judge Hernán D. Vera
Magistrate Judge A. Joel Richlin

**COME NOW PLAINTIFFS AND ALLEGE;**

NT CAPITAL MANAGEMENT LLC, a Delaware Limited Liability Company and TIEN DUNG NGUYEN, an Individual (herein "Plaintiffs"), COME NOW and herein amend the allegations against defendant TRUIST BANK, NA, a National Association, STACEY A. SHERMAN, an Individual, DEBORAH M. BRYAN, an Individual, EA ENGINEERING SCIENCE AND TECHNOLOGY INC., a Maryland corporation, and DOES 1 through 20 (herein together as "Defendants"), Inclusive, as follows;

1. Plaintiff TIEN DUNG NGUYEN ("Mr. Nguyen"), an individual, is, and at all times mentioned was, a resident of San Mateo County, California.

2. Plaintiff NT CAPITAL MANAGEMENT LLC ("NT Capital"), a Delaware limited liability company, is, and at all times mentioned was, a Delaware limited liability company doing business in Los Angeles County, California and organized, existing and doing business in the State of Delaware.

3. Defendant TRUIST BANK, NA, ("Defendants"), a National Association, is and at times mentioned was, a national banking association doing business in Los Angeles County, California, and organized, existing and engaged in operating and conducting general banking services in the State of North Carolina with its principal place of business at 214 North Tryon Street, Charlotte, North Carolina, 28202.

4. Defendant STACEY A. SHERMAN ("Ms. Sherman"), based on upon information and belief, an individual, is, and at all times mentioned was, a resident of the State of Maryland.

5. Defendant DEBORAH M. BRYAN ("Ms. Bryan"), based on upon information and belief, an individual, is, and at all times mentioned was, a resident of unknown jurisdiction.

6. Defendant EA ENGINEERING SCIENCE AND TECHNOLOGY INC ("EA Engineering"), based on information and belief, a Maryland corporation, is, and at all times mentioned was, a Maryland corporation doing business in Maryland and organized, existing and doing business in the State of Maryland.

7. Venue in this Court is proper within this County and within this judicial district. This Court has jurisdiction over this matter because Defendants conduct business in Los Angeles County and have substantial contacts with the State of California and the amount sought meets the amount in controversy of this Court.

8. Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 20, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

9. Plaintiffs are informed and believe and thereon allege that, at all relevant times Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees and/or agents and are liable for the wrongful conduct of its employees and/or agents as alleged herein.

10. Plaintiffs are informed and believe and thereon allege on that basis that, at all relevant times each defendant was an alter-ego of each and every other defendant. Unity of interest and ownership existed such that the separate personalities of each defendant never existed or ceased to exist. Further, if the acts are treated as those of one of the defendants also, an inequitable result will follow. Accordingly, Plaintiff alleges that each defendant was an alter-ego of each and every other defendant and vice versa.

## SUMMARY OF FACTS

11. This Second Amended Complaint ("SAC") must be filed now because after 3 years of inquires and 4 months of discovery in this case, Defendant Truist Bank was finally forced to turn over a treasure trove of critical documents relevant to this case that it exclusively possessed. This treasure trove of new evidence contains the names, addresses, tax identification numbers, bank statements, bank transaction records, bank account opening documents, emails from the Truist Bank's fraud department, Truist Bank communications with our clients, and other relevant information, and most importantly information on Defendant Truist Bank's Senior Relationship Banks Alison Biddson, who was directly involved. Immediately after obtaining this information, Plaintiffs and Plaintiffs counsel began to diligently and vigorously professionally investigate, verify,

and analyze this new information and documents. Plaintiff also sought out and retained co-counsel to also investigate, verify, and analyze this new information to determine new Defendants and new claims needed to add to this lawsuit based on their experience and specialty knowledge.

12. The new information finally pulls back the curtain that Defendant Truist Bank has attempted to keep drawn and reveals the plot of this terrible scam perpetrated against Plaintiffs. The facts will be proven that Defendant Stacey A. Sherman incorporated a company named EA ENGINEERING SCIENCE AND TECHNOLOGY INC ("EA Engineering") on July 24, 2023, in the small town of Pasadena, Maryland, allegedly as the owner of this engineering company.

13. Based on information and belief, and alleged as such, just 3 days later, Defendant Ms. Sherman walked into a Defendant Truist Bank in the same small town of Pasadena, Maryland, and met with Truist Bank's Senior Relationship Banker, Ashley Biddison, and opened Truist Simple Business Checking, account #0438 ("Truist Account in Question") under the name of Defendant EA ENGINEERING SCIENCE AND TECHNOLOGY INC ("EA Engineering") . At the time, AE Engineering had only been incorporated 3 days earlier, had no prior banking history and rated a High Risk/Moderate/High risk with Dun & Bradstreet Data Universal Numbering System (DUNS). Moreover, in even smaller town about 30 miles away, in Hunt Valley, Maryland, a legitimate company named EA ENGINEERING, SCIENCE, AND TECHNOLOGY INC., PBC, already existed and conducted actual engineering work. Ignoring all of these red flags, Defendant Truist Bank's Senior Relationship Banker Alison Biddison opened the Truist Account in Question for Defendant Ms. Sherman and Defendant EA Engineering.

14. It was this Truist Account in Question that fraudulently received Plaintiffs' One Million, Fifty Thousand and Thirty-Five Dollars ($1,050,035.00) ("Payment Orders") on August 3, 2023. One day later, Defendant Truist Bank began emptying the Truist Account in Question, clearing checks for $255,000.00, $380,000.00, $140,000.00 to Defendant Ms. Sherman and other Defendants. Based on information and belief, and alleged as such, all these fraudulent transactions were conducted while Defendant Truist Bank Senior Relationship Banker was communicating with Defendant Ms. Sherman.

15. The new evidence now shows that Defendant Truist Bank was alerted and aware of the fraudulent Truist Account in Question by Plaintiffs and their banks, Chase and Bank of America, at this time. In fact, Defendant Truist Bank issued their own fraud alerts yet did nothing to prevent or discourage their employee, Defendant Truist Bank Senior Relationship Banker Alison Biddison, on August 31, 2023, from issuing a fraudulent internal FORCE PAY DEBTI MEMO for a cashier's check of the remaining $258, 235.11 in the Truist Account in Question to Defendant EA Engineering and Defendant Stacey A. Sherman. The Miscellaneous Debit Description Box for the receipt issued by Defendant Truist Bank for this cashier check even stated *Acct Closure due to fraud* yet Defendant Truist Bank Senior Relationship Banker Alison Biddison prepared and processed this last fraudulent transaction.

Therefore, based on this new information, Plaintiffs respectfully submit this Second Amended Complaint.

## GENERAL ALLEGATIONS

16. Defendant Truist Bank's ("Truist Bank") promotional identity centers on the concept of "purpose-driven" banking, often utilizing the tagline "Inspiring and building better lives and communities". Defendant Truist Bank offers a full suite of deposit products: savings and checking accounts, certificates of deposit (CDs) and a money market account. Its nearly 2,000 branch locations and around 2,800 ATMs are concentrated in the Midwest and Southeast. Defendant Truist Bank proactively monitors bank accounts for questionable activity and stays current with industry security standards. Defendant Truist Bank markets itself to "proactively fight fraud and other security threats with a multi-layered strategy of technology and dedicated teams."

17. On or about July 27, 2023, Stacey A. Sherman ("Ms. Sherman") opened a Truist Simple Business Checking, account #0438 ("Truist Account in Question"), with Defendant Truist Bank in Pasadena, MD, with the assistance of Truist Bank Senior Relationship Banker Ashley Biddison, under the company name of EA Engineering Science and Technology IN ("EA Engineering"), as owner, and with the mailing address of 4125 Apple Leaf Court, Pasadena, MD, 21122. Defendant Ms. Sherman

established the Truist Account in Question with the deposit of a mere One Hundred Dollars and No Cents ($100.00).

18. Based on information and belief, and alleged as such, Defendant Ms. Sherman opened the Truist Account in Question on behalf of Defendant EA Engineering Science and Technology IN three days after EA Engineering Science and Technology INC's date of incorporation. Coincidently, there was also a company named EA Engineering, Science, and Technology, Inc., PBC, located in a small town named Hunt Valley, Maryland about 30 miles away from EA Engineering Science and Technology INC, which conducted actual engineering.

19. On or about August 3, 2023, Plaintiff Mr. Nguyen sent via electronic wire funds from his personal Bank of America account the amount of Four Hundred and Twenty Thousand Dollars ($420,000.00) to defendant Truist Bank intended for the Truist Account in Question which he believed was owned by Composite Ventures Hero LLC. After the wire was sent by Plaintiff Mr. Nguyen, an unknown person sent him an email that the wired funds had been received. Unbeknownst to Plaintiff Mr. Nguyen, the Truist Account in Question he believed was owned by Composite Ventures Hero LLC was in fact owned by EA Engineering. After realizing the Payment Order was not received by Composite Ventures Hero LLC, Plaintiff Mr. Nguyen immediately contacted Bank of America and Truist Bank to demand a return of funds and recall of the transfer. Plaintiffs are informed and believe and thereon allege on that basis that, Defendant Truist Bank alerted their fraud department about the Truist Account in Question and also denied all recall efforts made by Plaintiffs to return the missing funds from the Truist Account in Question. Plaintiff Mr. Nguyen is informed and believes that all information regarding the lost funds is known exclusively by Defendants. To date, no response nor return of the lost funds has been received by Plaintiff Mr. Nguyen.

20. On or about August 3, 2023, Plaintiff NT Capital, under the direction of Son Nguyen, a director and the son of plaintiff Mr. Nguyen, sent via electronic wire funds from its business Chase Bank account the amount of Six Hundred and Thirty Thousand, Thirty-Five Dollars ($630,035.00) (herein together as "Payment Orders") to defendant Truist Bank intended for the Truist Account in Question he believed was owned by Composite Ventures Hero LLC. After the wire was sent by Plaintiff NT Capital, an unknown person sent it an email that the wired funds had been received.

Unbeknownst to Plaintiff NT Capital, the Truist Account in Question he believed was owned by Composite Ventures Hero LLC was in fact owned by EA Engineering. After realizing the Payment Order was not received by Composite Ventures Hero LLC, Plaintiff NT Capital immediately contacted Chase Bank and Truist Bank to demand a return of funds and recall of the transfer. Plaintiffs are informed and believe and thereon allege on that basis that, Defendant Truist Bank alerted their fraud department about the Truist Account in Question and also denied all recall efforts made by Plaintiffs to return the missing funds from the Truist Account in Question. Plaintiff NT Capital is informed and believes that all information regarding the lost funds is known exclusively by Defendants. To date, no response nor return of the lost funds has been received by Plaintiff NT Capital.

21. On or about August 3, 2023, August 7, 2023, August 8, 2023, and August 10, 2023, Defendant Ms. Sherman sent from the Truist Account in Question a total of $16,800 via Defendant Truist Bank's Zelle feature to herself.

22. On or about August 4, 2023, Defendant Ms. Sherman wrote from the Truist Account in Question a check in the amount of $255,000 to Defendant Deborah M Bryan.

23. On or about August 7, 2023, Defendant Ms. Sherman wrote from the Truist Account in Question a check in the amount of $380,000 to Best Resources LLC.

24. On or about August 9, 2023, Defendant Ms. Sherman wrote from the Truist Account in Question a check in the amount $140,000 to herself.

25. On or about August 31, 2023, Defendant Truist Senior Bank Relationship Banker Alison Biddison issued an internal FORCE PAY DEBIT MEMO for a cashier's check of the remaining $258, 235.00.11 in the Truist Account in Question to Defendant EA Engineering and Defendant Stacey A. Sherman. The Miscellaneous Debit Description Box for the receipt issued by Defendant Truist Bank for this cashier check stated *Acct Closure due to fraud* yet Defendant Truist Bank Relationship Manager Alison Biddison prepared and processed this last fraudulent transaction.

26. On November 10, 2024, Plaintiffs filed a complaint against Defendant Truist Bank for California Commercial Code Section 11207, Negligence and Money Had and Received in Los Angeles Superior Court. Defendant Truist Bank removed this case to US District Court. Defendant

Truist Bank filed two Motions to Dismiss, the first Motion to Dismiss was granted with leave to amend, the second Motion to Dismiss was denied. Defendant Truist Bank also filed a Motion to Certify Discretionary Appeal, which was also denied.

27. On October 20, 2025, defense counsel for Truist Bank served Plaintiffs' counsel with Truist Bank's Initial Disclosures which did not list the names, addresses, tax identification numbers, bank statements, bank transaction records, bank account opening documents, emails from the bank's fraud department, bank communications with our clients or any information about the new Defendant Stacey A. Sherman, the individual who opened the Truist Account in Question and sent out all the money within days, Defendant EA Engineering Science and Technology IN, the company which owned the Truist Account in Question, or Defendants Deborah M. Bryan and Best Resources LLC, the individual and entity, who days after the wires were received by Defendant Truist Bank received funds from the Truist Account in Question, or Defendant Truist Bank's Senior Relationship Banker Alison Biddison's involvement.

28. On November 14, 2025, Plaintiff counsel served written discovery Requests on Defendant Truist Bank, specifically Interrogatories and Request for Production of Documents. After two extensions were requested by Defendants and granted by Plaintiffs, on or about January 29, 2026, Defendant Truist Bank served its Responses and Document Production to Plaintiffs written discovery.

29. It was in these Truist Bank discovery Responses that Plaintiffs first became aware of the actions and involvement of Defendant Truist Bank' Senior Relationship Banker Alison Biddson, the names, addresses, tax identification information and related documents for Defendant Stacey A. Sherman, the individual who opened the Truist Account in Question and who days after the wires were received by Defendant Truist Bank received funds from the Truist Account in Question and transferred the funds out of the Truist Account in Question, Defendant EA Engineering Science and Technology INC, the company which owned the Truist Account in Question, and Defendant Deborah M. Bryan, the individual who days after the wires were received by Defendant Truist Bank received funds from the Truist Account in Question. The new information turned over in Truist Bank's discovery Responses included but was not limited to Truist banking statements, bank account

opening documents, social security number of Defendant Ms. Sherman, tax number for EA Engineering, Zelle transfer documentation, check copies, FORCE PAY DEBIT MEMO receipts, internal emails from its fraud department, correspondence with Plaintiffs, addresses and other documents relating to the Truist Account in Question.

30. Upon receipt of Defendant Truist Bank's discovery responses containing the new Defendants names and new facts, Plaintiffs acted with all possible diligence and haste to meet with Plaintiffs and have the new facts and new potential Defendants including Ms. Stacey A. Sherman, EA Engineering Science and Technology INC, Deborah M. Bryan, professionally investigated and analyzed, as well as retained co-counsel with experience in the new claims in this matter, and duly prepared and filed Plaintiffs' Motion for Modification of Scheduling Order and Leave of Court to File Second Amended Complaint with these new parties and new claims including (1) Cal. Com. Code § 11207, (2) Negligent Hiring, Supervision and Retention, (3) Aiding and Abetting Fraud, (4) (5) Conversion and (6) Declaratory Relief.

31. On March 27, 2026, Plaintiff met and conferred with Defendant Truist Bank counsel to request a joint stipulation to modify the Schedule Order and file a Second Amended Complaint in this matter. Defendant Truist Bank stated it had no position on the Motion for Modification of Scheduling Order and Leave of Court to File Second Amended Complaint. Therefore, Plaintiffs had no choice but to bring their Motion to request just and reasonable relief.

32. Defendants have still failed to return the wire transfers to Plaintiffs despite repeated demands for the return of the wire transfers by both Plaintiff Mr. Nguyen and Plaintiff NT Capital.

<u>FIRST CAUSE OF ACTION</u>

CAL. COM. CODE SECTION 11207

(Against ~~all~~ Defendant~~s~~ Truist Bank)

33. Plaintiffs re-allege and incorporate paragraphs 1 through ~~10~~ 32 of the Complaint as though fully set forth herein at length.

34. On or about August 3, 2023, Plaintiffs sent two separate Payment Orders via electronic wire in the amount of Four Hundred and Twenty Thousand Dollars ($420,000.00) and Six

Hundred and Thirty Thousand, Thirty-Five Dollars ($630,035.00) ("Payment Orders") to Defendants Truist Bank Account in Question.

35. The Payment Orders for both transactions were sent to Defendants Truist Bank and specifically sent to Truist Account in Question with account number X0438 and with the account name Composite Ventures Hero LLC.

36. In fact, unbeknownst to Plaintiffs, who are informed and believe and hereon allege on that basis that there was no account held by Defendants Truist Bank with account number X0438 with the account name of Composite Ventures Hero LLC. The Truist Account in Question with account number X0438 was held under the name of EA Engineering ~~Services~~ and Defendant Truist Bank, and it's Senior Relationship Banker Alison Biddison, had actual knowledge of this fact.

37. The Payment Orders were therefore transferred to an unidentifiable account or person.

38. There are no similarities, commonalities or resemblance between the names Composite Ventures Hero LLC and EA Engineering Services. Plaintiffs' are informed and believe and hereon allege on that basis that this shows a complete disconnect of which Defendants Truist Bank and it's Senior Relationship Banker Alison Biddison, had actual knowledge.

39. Plaintiffs are informed and believe and hereon allege on that basis that Defendants owed Plaintiffs a duty of ordinary care to refuse the Payment Orders into account number X0438 because Defendants Truist Bank, and it's Senior Relationship Banker Alison Biddison, had actual knowledge that the beneficiary's name on the Payment Orders did not match, or even resemble, the name of the account into which the funds deposited.

40. Plaintiffs are informed and believe and hereon allege on that basis that Defendants Truist Bank had a system in place that indicates actual knowledge of a variance between the name and number on the wire transfers herein at issue as well as numerous security procedures to prevent fraudulent accounts in their bank. Plaintiffs, on information and belief and on that basis allege, that there were numerous extenuating circumstances that provided Defendants Truist Bank actual knowledge that fraud was afoot in their own bank against Plaintiffs including but not limited to the fact that AE Engineering had only been created 3 days earlier, had no prior banking history and was rated a High Risk/Moderate/High risk with Dun & Bradstreet Data Universal Numbering System

(DUNS). Moreover, in another very small town about 40 miles away, also in Maryland, a legitimate company named EA ENGINEERING, SCIENCE, AND TECHNOLOGY INC., PBC, already existed and was conducting engineering business. Furthermore, Plaintiffs and Plaintiffs' banks immediately contacted Defendants Truist Bank to recall the Payment Orders whereby the Truist Account in Question at issue was frozen and all recall requests denied by Defendants Truist Bank as well as Defendants Truist Bank refusing to inform Plaintiffs where their One Million, Fifty Thousand and Thirty-Five Dollars ($1,050,035.00) went despite maintaining exclusive knowledge of this information.

41. Plaintiffs, on information and belief and on that basis hereon allege, that Defendants ability to freeze of the account at issue and its refusal to comply with the request to recall the transfers or inform Plaintiffs where their money went, based on their ability to reject a wire transfer and freeze fraudulent accounts, as well as numerous security procedures to prevent fraudulent accounts in their bank and the close contact Defendant Truist Bank's Senior Relationship Banker Alison Biddison had with Defendant Stacey A. Sherman, demonstrate that Defendants Truist Bank had actual knowledge of the complete disconnect in the account names and the fraudulent activity and such information was known exclusively by Defendants.

42. A receiving bank, such a Defendants Truist Bank, cannot conduct their business with "blinders on" to extenuating circumstances.

43. Plaintiffs, on information and belief and on that basis hereon allege, that Defendants' Truist Bank 's acceptance of the wire transfers listing EA Engineering ~~Services~~ as the beneficiary into the Composite Ventures Hero LLC account, with actual knowledge of the complete disconnect wherein the designated name and account name bore no resemblance to each other and has nothing in common with each other, as well as the other indicia of fraud such as the existence of the fraudulent account in their own bank and Defendants Truist Bank denial of Plaintiffs numerous complaints and notices of the fraudulent scheme occurring as well as the close contact Defendant Truist Bank's Senior Relationship Banker Alison Biddison had with Defendant Stacey A. Sherman, and the Defendants' freezing of the relevant account and denial of the recall request and failure to inform Plaintiffs where their money is, when Defendants maintained exclusive knowledge of these facts,

constitutes actual knowledge and is a breach and failure to exercise ordinary care which proximately caused Plaintiffs to suffer damages.

44. No person has rights to the Payment Orders and therefore acceptance of the Payment Order cannot occur and must be returned to Plaintiff.

45. Plaintiffs have made repeated demands for the return of their deposits and Defendants have failed to respond.

SECOND CAUSE OF ACTION

NEGLIGENT HIRING, SUPERVISION AND RETENTION

(Against Defendant Truist Bank)

46. Plaintiffs re-allege and incorporate paragraphs 1 through 45 of the Complaint as though fully set forth herein at length.

47. Defendant Truist Bank hired Alison Biddicot as a Senior Relationship Banker at Defendant Truist Bank's HOWARD/NAA – PASADENA office, located at 3030 Mountain Road, Pasadena, Maryland, 21122-2016.

48. Defendant Truist Bank's employee Senior Relationship Banker Alison Biddison was, or did become, unfit to perform the work for which she was hired by Defendant Truist Bank, to wit, within mere days of the Truist Account in Question opening on or about July 27, 2023, with an initial deposit of approximately $100.00, the Truist Account in Question began receiving extraordinarily large deposits wholly inconsistent with the nature, history, and expected activity of a newly opened account within a sophisticated financial institution such as Defendant Truist Bank. By August 3, 2023, the Truist Account in Question had received in excess of $1.050 million in inbound transfers from the Plaintiffs.

49. Defendant Truist Bank maintains state of the art transaction monitoring systems, policies, and procedures designed to identify irregular bank account activity, including but not limited to unusual transaction velocity, atypical account activity, and large-dollar transfers inconsistent with customer profile. The activity in the subject account triggered multiple such alerts, including alerts based on (i) rapid inflows of large-dollar transactions, (ii) transaction volumes grossly disproportionate

to the Truist Account in Question's opening balance and history, and (iii) patterns consistent with known fraud and money laundering typologies.

50. Upon information and belief, the alerts generated by Defendant Truist Bank's monitoring systems were reviewed by its personnel, including Defendant Truist Bank's Senior Relationship Banker Alison Biddison and those responsible for fraud detection and anti-money laundering compliance. As a result of these reviews, Defendant Truist Bank and its employee Alison Biddson acquired actual knowledge that the account was being used as an instrumentality of fraud and to receive misappropriated funds belonging to Plaintiffs.

51. Notwithstanding such knowledge, Defendant Truist Bank and its employee Alison Biddison knowingly and intentionally permitted the Truist Account in Question to be and remain open and continued to process incoming and outgoing transfers, thereby enabling the rapid dissipation of fraudulently obtained funds. Defendant Truist Bank failed to take reasonable steps to freeze the Truist Account in Question, reject transfers from the Truist Account in Question, or otherwise prevent further misuse of the Truist Account in Question.

52. Defendant Truist Bank's conduct constituted substantial assistance to the perpetrators of the fraud in that, without the continued operation of the Truist Account in question and processing of transactions by Defendant Truist Bank, the fraudulent scheme could not have been executed or completed..

53. Defendant Truist Bank and its employee Alison Biddison had actual knowledge of the fraudulent scheme and substantially assisted and participated in its commission by providing banking services with such knowledge, including the acceptance and processing of fraudulent transfers and the facilitation of the movement and withdrawal of funds.

54. Under Approved Mortgage Corporation v. Truist Bank, (2024) 106 F. 4th 582, 593, Truist Bank can be held liable for acts that are outside the scope of UCC Article 4.1.

55. Defendant Truist Bank owed duties to Plaintiffs to take reasonable steps to prevent it from suffering foreseeable harm.

56. Defendant Truist Bank knew or should have known that its employee Truist Bank Senior Relationship Banker Alison Biddison was or became unfit to perform her duties at Truist Bank and that this unfitness created a particular risk to others, including Plaintiffs.

57. Banks such as Defendant Truist Bank are required to know their customers and understand their banking activities and conduct. They must supervise their employees and their customers account and engage in the due diligence both at the outset of the relationship and continuously during the relationship with the customer. Specifically, Defendant Truist Bank is a bank that must maintain procedures that allow it to form a reasonable belief that it knows the true identity of each customer.

58. Defendant Truist Bank breached their duty owed to Plaintiffs by hiring, failing to supervise and retaining its employee Senior Relationship Banker Alison Biddson so as to prevent Plaintiff Mr. Ngyuen's Payment Order and the transfer of the amount of Six Hundred and Thirty Thousand, Thirty Five Dollars ($630,035.00) and Plaintiff NT Capital's Payment Order and the transfer of the amount of Four Hundred and Twenty Thousand Dollars ($420,000.00) from being transferred into the wrong account owned by Defendant EA Engineering and not into the intended account owned by Composite Ventures Hero LLC and by failing to prevent the funds from then being transferred out of their Bank to the co-Defendants and not return the funds to Plaintiffs.

59. Defendant Truist Bank and its employee Alison Biddison also breached their duty owed to Plaintiffs, based on information and belief, and alleged as such, when just 3 days after incorporation of EA Engineering, Defendant Ms. Sherman walked into a Defendant Truist Bank in the same small town of Pasadena, Maryland, and met with Truist Bank's Senior Relationship Banker, Ashley Biddison, and opened Truist Simple Business Checking, account #0438 ("Truist Account in Question"). At the time, AE Engineering had only been incorporated 3 days earlier, had no prior banking history and was rated a High Risk/Moderate/High risk with Dun & Bradstreet Data Universal Numbering System (DUNS). Moreover, in another very small town about 40 miles away, also in Maryland, a legitimate company named EA ENGINEERING, SCIENCE, AND TECHNOLOGY INC., PBC, already existed. Ignoring all of these red flags, Defendant Truist Bank's

Senior Relationship Banker Alison Biddison breached its duty and opened the Truist Account in Question for Defendant Ms. Sherman and Defendant EA Engineering.

60. Defendant Truist Bank and its employee Alison Biddison also breached their duty owed to Plaintiffs by failing to identify and prevent Plaintiffs funds in the amount of $258,235.11 from being transferred out of the Truist Account in Question to Defendant Stacey A. Sherman using a FORCE PAY DEBIT MEMO description and cashiers check with the Miscellaneous Debit Description Box for the receipt issued by Defendant Truist Bank for this cashier check stating *Acct Closure due to fraud*.

61. Defendant Truist Bank's negligence in hiring, supervising and retaining its employee Senior Relationship Banker Alison Biddson was a substantial factor in Plaintiffs' harm.

62. Plaintiffs suffered damages as a direct and foreseeable result of Defendant Truist Bank's breach of its duties to Plaintiffs.

63. Plaintiffs are informed and believe that Defendant Truist Bank acted willfully and with the intent to cause injury to Plaintiffs. Defendants are therefore guilty of acting with malice in conscious disregard of Plaintiffs' rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

64. Plaintiffs suffered damages in the amount to be proven at trial.

THIRD CAUSE OF ACTION

Aiding and Abetting Fraud

(Against Defendant Truist Bank)

65. Plaintiffs re-allege and incorporate paragraphs 1 through 64 of the Complaint as though fully set forth herein at length.

66. Within mere days of the account's opening on or about July 27, 2023, with an initial deposit of approximately $100.00, the Truist Account in Question began receiving extraordinarily large deposits wholly inconsistent with the nature, history, and expected activity of a newly opened account within a sophisticated financial institution such as Defendant Truist Bank. By August 3, 2023, the

Truist Account in Question had received in excess of $1.050 million in inbound transfers from the Plaintiffs.

67. Defendant Truist Bank maintains state of the art transaction monitoring systems, policies, and procedures designed to identify irregular bank account activity, including but not limited to unusual transaction velocity, atypical account activity, and large-dollar transfers inconsistent with customer profile. The activity in the subject account triggered multiple such alerts, including alerts based on (i) rapid inflows of large-dollar transactions, (ii) transaction volumes grossly disproportionate to the Truist Account in Question's opening balance and history, and (iii) patterns consistent with known fraud and money laundering typologies.

68. Upon information and belief, the alerts generated by Defendant Truist Bank's monitoring systems were reviewed by its personnel, including those responsible for fraud detection and anti-money laundering compliance. As a result of these reviews, Defendant Truist Bank acquired actual knowledge that the account was being used as an instrumentality of fraud and to receive misappropriated funds belonging to Plaintiffs.

69. Notwithstanding such knowledge, Defendant Truist Bank knowingly and intentionally permitted the Truist Account in Question to remain open and continued to process incoming and outgoing transfers, thereby enabling the rapid dissipation of fraudulently obtained funds. Defendant Truist Bank failed to take reasonable steps to freeze the Truist Account in Question, reject transfers from the Truist Account in Question, or otherwise prevent further misuse of the Truist Account in Question.

70. Defendant Truist Bank's conduct constituted substantial assistance to the perpetrators of the fraud in that, without the continued operation of the Truist Account in question and processing of transactions by Defendant Truist Bank, the fraudulent scheme could not have been executed or completed. Defendant Truist Bank's actions were a substantial factor in causing Plaintiffs' damages.

71. Defendant Truist Bank had actual knowledge of the fraudulent scheme and substantially assisted and participated in its commission by providing banking services with such knowledge, including the acceptance and processing of fraudulent transfers and the facilitation of the movement and withdrawal of funds.

72. Defendant Truist Bank owed duties to Plaintiffs to take reasonable steps to prevent it from suffering foreseeable harm.

73. Banks such as Defendant Truist Bank are required to know their customers and understand their banking activities and conduct. They must supervise their customers account and engage in the due diligence both at the outset of the relationship and continuously during the relationship with the customer. Specifically, Defendant Truist Bank is a bank that must maintain procedures that allow it to form a reasonable belief that it knows the true identity of each customer.

74. Based on information and belief, and alleged as such, Defendant Truist Bank breached their duty owed to Plaintiffs by hiring, failing to supervise and retaining its employee Senior Relationship Banker Alison Biddson who aided in the transfer of Plaintiffs' Payment Orders into the wrong account owned by Defendant EA Engineering and not into the intended account owned by Composite Ventures Hero LLC and aided in the transfer of the Payment Orders to the co-Defendants and not to Plaintiffs.

75. Defendant Truist Bank and its employee Alison Biddison also breached their duty owed to Plaintiffs, based on information and belief, and alleged as such, when just 3 days after incorporation of EA Engineering, Defendant Ms. Sherman walked into a Defendant Truist Bank in the same small town of Pasadena, Maryland, and met with Truist Bank's Senior Relationship Banker, Ashley Biddison, and opened Truist Simple Business Checking, account #0438 ("Truist Account in Question"). At the time, AE Engineering had only been incorporated 3 days earlier, had no prior banking history and was rated a High Risk/Moderate/High risk with Dun & Bradstreet Data Universal Numbering System (DUNS). Moreover, in another very small town about 40 miles away, also in Maryland, a legitimate company named EA ENGINEERING, SCIENCE, AND TECHNOLOGY INC., PBC, already existed. Ignoring all of these red flags, Defendant Truist Bank's Senior Relationship Banker Alison Biddison breached its duty and opened the Truist Account in Question for Defendant Ms. Sherman and Defendant EA Engineering.

76. Defendant Truist Bank and its employee Alison Biddison also breached their duty owed to Plaintiffs by failing to identify and prevent Plaintiffs funds in the amount of $258,235.11 from being transferred out of the Truist Account in Question to Defendant Stacey A. Sherman using a

FORCE PAY DEBIT MEMO description and cashiers check with the Miscellaneous Debit Description Box for the receipt issued by Defendant Truist Bank for this cashier check stating *Acct Closure due to fraud*.

77. Plaintiffs suffered damages as a direct and foreseeable result of Defendant Truist Bank's breach of its duties to Plaintiffs.

78. Plaintiffs are informed and believe that Defendant Truist Bank acted willfully and with the intent to cause injury to Plaintiffs. Defendants are therefore guilty of acting with malice in conscious disregard of Plaintiffs' rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

79. Plaintiffs suffered damages in the amount to be proven at trial.

FOURTH CAUSE OF ACTION

Conversion

(Against All Defendants)

80. Plaintiffs re-allege and incorporate paragraphs 1 through 79 of the Complaint as though fully set forth herein at length.

81. Plaintiffs had a right to possession of funds sent as the two separate Payment Orders in the amount of Four Hundred and Twenty Thousand Dollars ($420,000.00) and Six Hundred and Thirty Thousand, Thirty-Five Dollars ($630,035.00) wired to Defendants.

82. Defendants intentionally and substantially interfered with Plaintiffs right to possession of the funds transferred as the two separate Payment Orders to Defendant Truist Bank by taking actions described above.

83. Plaintiff is informed and believes that Defendants acted willfully and with the intent to cause injury to Plaintiffs. Defendants are therefore guilty of acting with malice in conscious disregard of Plaintiffs' rights, thereby warranting an assessment of punitive damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct.

84. Plaintiffs did not consent to any of Defendants' wrongful action complained of herein and was harmed as a result of these acts and omissions.

85. Defendants' acts and omissions as alleged herein were a substantial factor in causing Plaintiffs' harm.

86. As a result of Defendants' conversion, Plaintiffs have incurred damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

Declaratory Relief

(Against All Defendants)

87. Plaintiffs re-allege and incorporate by reference each and every allegation of paragraphs 1 through 86, inclusive, as though fully set forth herein.

88. An actual controversy exists between Plaintiffs and Defendants regarding their respective rights and obligations concerning the Payment Orders. Specifically, Plaintiff asserts that they have the right to their lost funds.

89. Plaintiffs seek a judicial determination of the parties' rights and obligations, including a declaration regarding the ownership of their lost funds.

90. A judicial declaration is necessary and appropriate at this time to determine the parties' respective rights and obligations regarding the lost funds.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. For the amount of One Million, Fifty Thousand and Thirty-Five Dollars ($1,050,035.00);
2. For general damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims

allowed by law in an amount to be determined at trial; in the amount according to proof;

3. For special damages, in the amount according to proof;
4. For consequential damages, in the amount according to proof;
5. For punitive damages in an amount to proven at trial;
6. For an order regarding ownership of lost funds and returning the Payment Orders to Plaintiffs;
7. For reasonable attorney's fees to the extent permitted under contract and/or law;
8. For costs of suit herein;
9. For interest at the maximum permissible legal rate on all monetary sums found due according to proof and calculation at trial;
10. For such other and further relief as the Court deems just and proper.

Dated: June 7, 2026 LACHOWICZ LAW PC

By /s/ Nik Lachowicz

Nik Lachowicz
Attorneys for Plaintiffs NT CAPITAL MANAGEMENT LLC, a Limited Liability Company, and TIEN DUNG NGUYEN, an Individual

DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims.

Dated: June 7, 2026 LACHOWICZ LAW PC

By ____*/s/ Nik Lachowicz*_______
Nik Lachowicz, Esq.
Attorneys for Plaintiffs NT CAPITAL MANAGEMENT LLC, a Limited Liability Company, and TIEN DUNG NGUYEN, an Individual