UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NT CAPITAL MANAGEMENT LLC, et al.,

Plaintiffs,

v.

TRUIST BANK, NA, et al.,

Defendants.

Case No. 2:24-CV-09461-HDV-AJR

**ORDER PARTIALLY GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT [92]**

## I. INTRODUCTION

Plaintiffs NT Capital Management LLC ("NT Capital") and Tien Dun Nguyen (collectively, "Plaintiffs") allege that they were victims of a fraudulent investment scam and were instructed by third parties to wire money from their banks to an account maintained at Defendant Truist Bank, NA ("Truist"). Unbeknownst to Plaintiffs, the account number given to them did not correspond to the investment entity they intended to receive the funds. After initial discovery provided more information about what occurred, the Second Amended Complaint ("SAC") now includes specific transaction details averring that a Truist senior banker aided and abetted the scammers in draining the funds from the Truist account after indicia of fraud were purportedly triggered.

Before the Court is Defendant Truist's Motion to Dismiss the SAC ("Motion"). [Dkt. 92]. For the reasons enumerated below, the Court concludes that the SAC adequately and with sufficient particularity alleges the "actual knowledge" requirement necessary to state a plausible claim under California Commercial Code section 11207 ("Section 11207") and aiding and abetting fraud. The other remaining claims are dismissed without leave to amend.

## II. BACKGROUND

This is the third motion to dismiss brought before the Court in this action. [Dkts. 18, 37, 92]. The Court granted the first motion to dismiss, dismissing Plaintiffs' common law claims with prejudice and dismissing the claim for violation of Section 11207 with leave to amend. First Order at 6–7 [Dkt. 35]. The Court denied the second motion to dismiss, finding that the First Amended Complaint stated a claim under Section 11207. Second Order at 5 [Dkt. 47].

Plaintiffs then moved for and were granted leave to file a second amended complaint based on new information revealed during discovery. [Dkt. 84]. The new information involves the identities of the Truist account owner and a Truist employee involved in the account's transactions. *Id.* The SAC allegations are taken as true for purposes of deciding the Motion and recounted as relevant below. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (plausible, factual allegations must be taken as true at the motion to dismiss stage).

On August 3, 2023, Plaintiffs Tien Dung Nguyen ("Nguyen") and NT Capital Management LLC ("NT Capital") sent two payment orders for wire transfers to the Truist account with number X0438, and to Composite Ventures Hero LLC ("Composite Ventures"). SAC ¶ 19, 20. Nguyen sent $420,000 from his personal Bank of America account and NT Capital sent $630,035 from its Chase Bank account, for a total of $1,050,035. *Id.* However, the Truist bank account with the account number was in fact owned by EA Engineering. *Id.* ¶ 19.

Upon realizing that Composite Ventures Hero LLC did not receive their funds, Plaintiffs contacted their banks and Truist to recall the transfer. *Id.* ¶ 19, 20. Truist alerted its fraud department about the Truist account but denied Plaintiffs' recall requests. *Id.* As Plaintiffs attempted to recall their funds, the account owner began to drain the Truist account. *Id.* ¶ 21.

Six days before the wire transfers were made, Defendant Stacey A. Sherman ("Sherman") had opened the Truist account on behalf of Defendant EA Engineering Science and Technology Inc. ("EA Engineering"). *Id.* Sherman opened the account with a $100 deposit on July 27, 2023, three days after EA Engineering's date of incorporation. *Id.* ¶ 17, 18. Truist Senior Relationship Banker Ashley Biddison ("Biddison") helped Sherman open the Truist account. *Id.* ¶ 17.

Almost immediately, the withdrawals began. From August 3, 2023, to August 10, 2023, Sherman sent herself $16,800 from the Truist account via Zelle. *Id.* On August 4, 2023, Sherman wrote a $255,000 check from the Truist account to Defendant Deborah M. Bryan ("Bryan"). *Id.* ¶ 22. On August 7, 2023, Sherman wrote a $380,000 check from the Truist account to Best Resources LLC. *Id.* ¶ 23. On August 9, 2023, Sherman wrote a $140,000 check from the Truist account to herself. *Id.* ¶ 24. Finally, on August 31, 2023, Biddison issued a Force Pay Debit Memo from the Truist account for a $258, 235.00.11 cashier's check to Sherman and EA Engineering. *Id.* ¶ 25. This sum represented the remaining balance in the Truist account. *Id.* Truist issued a receipt for the cashier's check with a Miscellaneous Description Box that read "*Acct Closure due to fraud*." *Id.* Biddison processed this transaction anyway. *Id.*

Plaintiffs continue to allege a claim under Section 11207. In addition, Plaintiffs assert claims for negligent hiring, supervision and retention (claim two), aiding and abetting fraud (claim three),

conversion (claim four), and declaratory relief (claim five). SAC at 1. Defendants move to dismiss all the claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

The Motion is fully briefed [Dkts. 94, 96]. The Court heard oral argument on the Motion on September 17, 2026, and took the matter under submission [Dkt. 107].

## III. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether a complaint satisfies this standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In making this determination, allegations of material fact should be construed in the light most favorable to the plaintiff. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) (citation omitted).

## IV. DISCUSSION

### A. Claim One: Section 11207

Defendant essentially recycles its no-actual-knowledge argument that the Court already rejected. *See* Second Order at 5. The Court rejects the argument again and incorporates its prior discussion here. The Section 11207 claim survives.

### B. Claim Two: Negligent Hiring, Supervising and Retention

Plaintiffs assert a claim for negligence against Defendant based on their hiring, supervision and retention of Biddison. SAC ¶¶ 46–64. The Court previously dismissed Plaintiffs' negligence claim with prejudice because common law claims against banks for processing payments have been preempted by California's adoption of the Uniform Commercial Code. First Order at 4–6 (citing *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 251–52 (2007); *BPi Bright Power, Inc. v. Umpqua Holding Corp.*, 669 F. Supp. 3d 904, 906 (N.D. Cal. 2023)).

Plaintiffs attempt to duck this conclusion by alleging that Truist vicariously breached its duty to Plaintiffs through Biddison's actions and by negligently hiring, training and retaining this senior banker. But, again, this claim fails because Plaintiffs cannot allege Truist owed them a duty. Generally, "under California law, a bank owes no duty to nondepositors[,]" like Plaintiffs. *See Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1149 (2005). Claim two is dismissed.

**C. Claim Three: Aiding and Abetting Fraud**

The SAC includes a new claim against Truist for aiding and abetting fraud. SAC ¶ 76. Defendants move to dismiss, arguing that the SAC does not specifically allege that Truist "actually knew" that EA Engineering was "tricking Plaintiffs into sending the wire transfers to the Account." Motion at 21. The Court disagrees.

"A bank may be liable for aiding and abetting a tort when it renders 'substantial assistance' to a tortfeasor during a business transaction and 'knowingly aids the commission of the tort.'" *Mackintosh v. JPMorgan Chase Bank*, No. 18-CV-03348-SK, 2018 WL 3913791, at *3 (N.D. Cal. July 13, 2018) (quoting *Das v. Bank of America,* 186 Cal. App. 4th 727, 741 (2010)); *see also Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325–26 (1996) (same). Thus, while banks generally do not owe duties to non-customers, *see Casey,*127 Cal. App. 4th at 1149, they ***can*** be held liable for aiding and abetting fraud by a third party if they have actual knowledge of the fraud and provided substantial assistance. *In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) ("aiding and abetting liability under California law, as applied by the California state courts, requires a finding of actual knowledge[.]"). Indeed, in the banking context, " 'ordinary business transactions' a bank performs for a customer can satisfy the substantial assistance element of an aiding and abetting claim if the bank actually knew those transactions were assisting the customer in committing a specific tort." *Id.* at 995.

The SAC meets that standard, at least for pleading purposes. The SAC alleges that "as a result of these reviews [of the relevant alerts]" Truist and Biddson "acquired knowledge that the account was being used as an instrumentality of fraud[.]" SAC ¶ 50, 68. It further avers that Truist "knowingly and intentionally permitted" the account to remain open for the purpose of facilitating these unlawful transfers, thereby "enabling the rapid dissipation of fraudulently obtained funds." *Id.*

¶ 69. The SAC also identified with sufficient particularity all the individual transactions, *see* SAC ¶¶ 17-25, that Plaintiffs contend "constituted substantial assistance[.]" *Id.* ¶ 70. That is enough. Defendant's argument—that the SAC does not allege specific knowledge by Truist of the fraudulent nature of the ***initial*** wire transfers—slices the salami too finely. It is enough that the SAC alleges Truist's actual knowledge of the overall scheme and avers specifically the actions that Truist's bank manager took to provide substantial assistance in the execution of the fraud.

**D. Claim Four: Conversion**

Lastly, Plaintiffs assert a conversion claim against all defendants. SAC ¶¶ 80–86. The Court previously dismissed Plaintiffs' claim for "money had and received" because this common law claim in these circumstances is preempted by provisions of the California Commercial Code. *See* First Order at 4–6. Conversion and "money had and received" are substantially similar common law claims. *See, e.g., Risto v. Screen Actors Guild - Am. Fed'n of Television & Radio Artists*, 2018 WL 7016345, at *9 (C.D. Cal. Nov. 6, 2018) (comparing elements of two claims and evaluating them together); *Serviacero Especiales SA DE CV v. JPMorgan Chase Bank, N.A.*, 2021 WL 4805447, at *2–3 (C.D. Cal. May 20, 2021) (dismissing the common law claim of conversion for being pre-empted by the UCC after finding that UCC covers the circumstances giving rise to the common law claim). The Court's previous reasoning therefore applies equally to the claim for conversion. The claim is dismissed.

**E. Claim Five: Declaratory Relief**

Plaintiffs allege a claim for declaratory relief. SAC ¶¶ 87–90. But declaratory relief is not a standalone claim. *Roshan v. Lawrence*, 689 F. Supp. 3d 697, 702 n.2 (N.D. Cal. 2023). The claim is dismissed, although Plaintiffs will be allowed to seek declaratory relief as a remedy.

## V. CONCLUSION

The Motion is granted in part and denied in part. The Section 11207 and the aiding and abetting fraud claims survive. All other claims are dismissed without leave to amend.[1]

Dated: October 9, 2026

Hernán D. Vera
United States District Judge

[1] Because the Court has already dismissed substantially similar claims in its previous orders, and allowed multiple amendments, further amendment would be futile.